FIRST STATE INSURANCE COMPANY
and NEW ENGLAND REINSURANCE
CORPORATION,
     *Plaintiffs*,

     v.

FERGUSON ENTERPRISES, INC., ET AL.,
     *Defendants*.

No. 3:16-cv-1822 (VAB)

## RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On November 4, 2016, First State Insurance Company filed a Complaint seeking a declaratory judgment that various insurance companies refused to pay their fair share of costs under insurance policies held by Ferguson Enterprises, Inc. ("Ferguson"), the successor of Familian Corporation ("Familian"). Complaint, dated Nov. 4, 2016 ("Compl."), ECF No. 1; *see also* Amended Complaint, dated Jan. 11, 2017 ("Am. Compl."), ECF No. 55. On July 24, 2017, First State Insurance Company filed a Second Amended Complaint, joining an additional plaintiff, New England Reinsurance Corporation (together, both entities are hereafter referred to as "First State," following the language of the Second Amended Complaint). Second Amended Complaint, dated July 24, 2017 ("Second Am. Compl."), ECF No. 147.

A number of the parties have moved for summary judgment:

On January 8, 2018, First State moved for partial summary judgment on the number of aggregate limits provided by a policy issued by Swiss Reinsurance America Corporation as successor-in-interest to Forum Insurance Company ("Swiss Re"). First State's Motion for Summary Judgment on the Number of Aggregate Limits, dated Jan. 8, 2018 ("First State Mot."),

ECF No. 161. That same day, Ferguson also moved for partial summary judgment on the Swiss Re policy's liability limits. Ferguson's Motion for Partial Summary Judgment on the Swiss Re Policy's Limits of Liability, dated Jan. 8, 2018 ("Ferguson Mot. on Swiss Re"), ECF No. 162.

On March 1, 2018, Swiss Re moved for partial summary judgment on the aggregate limits of its policy. Swiss Re's Motion for Partial Summary Judgment, dated Mar. 1, 2018 ("Swiss Re Mot."), ECF No. 179.

On April 30, 2018, American Home Assurance Company ("American Home") moved for partial summary judgment and claimed that First State's claims are barred by the statute of limitations. American Home's Motion for Partial Summary Judgment (Statute of Limitations), dated Apr. 30, 2018 ("Am. Home Mot. on SOL"), ECF No. 191. That same day, American Home also moved for partial summary judgment on the aggregate limits under the policy it issued to Familian. American Home's Motion for Partial Summary Judgment (Aggregate Limits), dated Apr. 30, 2018 ("Am. Home Mot. on Agg. Limits"), ECF No. 192.

On June 4, 2018, Columbia Casualty Company and The Continental Insurance Company (together, "CNA") moved for partial summary judgment, arguing that certain claims against them are barred by the statute of limitations, and for partial joinder of American Home's motion for partial summary judgment on the statute of limitations, to the extent that it asks the Court to impose a limitations period on First State's claims with respect to past settlements. CNA's Motion for Partial Summary Judgment (Statute of Limitations), dated June 4, 2018 ("CNA Mot."), ECF No. 197.

Also, on June 4, 2018, Ferguson moved for partial summary judgment on the limits of liability of American Home's policy. Ferguson's Motion for Partial Summary Judgment on

American Home Policy's Limits of Liability, dated June 4, 2018 ("Ferguson Mot. on Am. Home"), ECF No. 204.

For the following reasons, First State's motion for partial summary judgment against Swiss Re, ECF No. 161, is **DENIED**. Ferguson's motion for partial summary judgment against Swiss Re, ECF No. 162, is **DENIED**. Swiss Re's motion for summary judgment on the aggregate limits of its policy, ECF No. 179, is **GRANTED**.

American Home's motion for summary judgment on aggregate limits, ECF No. 192, is **GRANTED**. Ferguson's motion for summary judgment against American Home, ECF No. 204, is **DENIED**.

American Home's motion for summary judgment on the statute of limitations, ECF No. 191, is **GRANTED**. CNA's motion for summary judgment and partial joinder, ECF No. 197, is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

#### 1. The Relevant Insurance Policies

First State alleges that, through a series of corporate transactions, Ferguson is the successor in interest to Familian. Second Am. Compl. ¶¶ 1–2. Familian allegedly "is a pipe and supply distributor for the plumbing and contractor industries," and from the 1950's until the 1970's "supplied certain products that allegedly contained asbestos." *Id.* ¶ 40. Since at least 1997, Ferguson has been named as a defendant in hundreds of lawsuits related to "bodily injuries allegedly caused by products sold by Familian that allegedly contained asbestos, in particular vent and flue pipe." *Id.* ¶¶ 42–43. Ferguson claims entitlement to insurance coverage for the

underlying lawsuits under insurance policies issued by First State and the Defendant Insurers. *Id.* ¶ 4.

Ferguson allegedly "tendered the Underlying Lawsuits to its primary insurers until approximately 2002, when its primary insurers asserted that they no longer had any coverage obligations to Ferguson or its predecessors for the Underlying Lawsuits under their primary policies because their primary policies had been exhausted." *Id.* ¶ 44.

On October 11, 2002, Ferguson allegedly sought coverage from First State. *Id.* ¶ 45. First State agreed to contribute "subject to a full reservation of rights, including the right to seek reimbursement or contribution from Ferguson and any other insurer[.]" *Id.* First State has allegedly "paid and continues to pay a share of Ferguson's defense and indemnity costs incurred in connection with the Underlying Lawsuits under the First State Policies." *Id.* ¶ 46.

First State alleges that the Defendant Insurers or Doe Insurers issued umbrella or excess liability insurance policies "to Familian or its alleged predecessors or successors that Ferguson alleges provide coverage to Ferguson for the Underlying Lawsuits." *Id.* ¶ 25.  First State alleges that the Defendant Insurers provided umbrella or excess policies to Familian over the following time periods:

- American Home, from March 5, 1974 to March 15, 1977, *id.* ¶ 26;

- Central National Insurance Company of Omaha ("Central National"), from March 5, 1979 to April 1, 1980, and from April 1, 1980 to April 1, 1981, *id.* ¶ 27;

- Century Indemnity Company ("Century"), from April 1, 1984 to December 18, 1984, *id.* ¶ 28;

- Columbia Casualty Company ("Columbia"), from March 15, 1978 to March 15, 1979, *id.* ¶ 29;

- Federal Insurance Company ("Federal"), from April 1, 1981 to April 1, 1982, *id.* ¶ 30;

- Fireman's Fund Insurance Company ("Fireman's Fund"), from April 1, 1982 to April 1, 1983, and from April 1, 1983 to April 1, 1984, i*d.* ¶ 31;

- Swiss Re, from December 18, 1984 to April 1, 1986, *id.* ¶ 32;

- Granite State Insurance Company, from April 1, 1985 to April 1, 1986, *id.* ¶ 33;

- Harbor Insurance Company, from March 15, 1978 to March 15, 1979, *id.* ¶ 34; and

- Insurance Company of the State of Pennsylvania, from March 15, 1977 to March 15, 1978, *id.* ¶ 35.

First State alleged that Doe Insurers also "may have issued policies to Familian that may provide coverage for the Underlying Lawsuits," and stated that "[w]hen the true names and capacities of the Doe Insurers have been ascertained, First State will seek to amend this Amended Complaint to include such true names and capacities." *Id.* ¶ 36.

First State alleges that First State Insurance Company issued "the following umbrella and/or excess policies to Familian that Ferguson alleges provide coverage to Ferguson for the Underlying Lawsuits: Policy No. 924478 (Policy Period March 23, 1977 to March 15, 1978), Policy No. 909537 (Policy Period March 15, 1978 to March 15, 1979), Policy No. 951240 (Policy Period April 1, 1982 to April 1, 1983), Policy No. 953803 (Policy Period April 1, 1983 to April 1, 1984), Policy No. 955231 (Policy Period April 1, 1984 to December 18, 1984), and Policy No. EU 002664 (Policy Period April 1, 1985 to April 1, 1986)." *Id.* ¶ 37. First State further alleges that New England Reinsurance Corporation issued the following umbrella or excess policies to Familian that Ferguson alleges provides coverage: Policy No. 686792 (Policy Period April 1, 1981 to April 1, 1982). *Id.* ¶ 38.

Since at least 2003, First State alleges that, "First State and certain of the Defendant Insurers have been participating in the defense and indemnification of Ferguson in connection with the Underlying Lawsuits," but "certain of the participating Defendant Insurers have refused to pay their fair share of past costs in connection with the Underlying Lawsuits," or have refused to participate in defending or indemnifying Ferguson at all. *Id.* ¶ 5.

First State alleges that "American Home, [Insurance Company of the State of Pennsylvania], Central National, and Swiss Re also have participated in the defense and settlement of the Underlying Lawsuits under some or all of their respective policies, but on information and belief have paid less than their respective allocable shares." *Id.* ¶ 47. American Home allegedly "participated in the defense and indemnification of Familian under a cost-share percentage that it negotiated with the participating insurers on the basis that it had provided coverage to Familian under a policy in effect from March 5, 1976 through March 15, 1977," but First State alleges that the American Home policy "was actually in effect from March 5, 1974 through March 15, 1977." *Id.* ¶ 48. First State alleges that it "paid more than its appropriate share of defense and indemnity costs and the other participating insurers paid less than their appropriate shares." *Id.* ¶ 50.

First State also alleges that it "is currently paying more than its appropriate share of defense and indemnity costs because, on information and belief, Columbia issued an excess insurance policy to Familian but Columbia has refused to participate in the defense and/or indemnification of Ferguson in connection with the Underlying Lawsuits, even though the primary and umbrella policies underlying its policy are exhausted." *Id.* ¶ 51.

### B. Procedural History

On November 4, 2016, First State Insurance Company filed a Complaint for Declaratory Judgment against ACE Property & Casualty Insurance Company, American Home Assurance Company, Columbia Casualty Company, Continental Insurance Company (successor-in-interest to Harbor Insurance Company), Federal Insurance Company, Fireman's Fund Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania,

Swiss Reinsurance America Company (successor-in-interest to Forum Insurance Company) (together, "Defendant Insurers"), and Ferguson Enterprises, Inc. *See* Compl.

On January 11, 2017, First State Insurance Company filed an Amended Complaint for Declaratory Relief against American Home Assurance Company, Central National Insurance Company of Omaha, but only as to policies issued by Cravens, Dargan & Company, Pacific Coast, and its subsidiaries, Century Indemnity Company, formerly known as CCI Insurance Company, formerly known as Insurance Company of North America, Columbia Casualty Company, The Continental Insurance Company (successor-in-interest to Harbor Insurance Company), Federal Insurance Company, Fireman's Fund Insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Swiss Reinsurance America Company (successor-in-interest to Forum Insurance Company) (together, "Defendant Insurers"), and Ferguson Enterprises, Inc. *See* Am. Compl.

On July 24, 2017, First State and New England Reinsurance Corporation (together, "First State") filed a Second Amended Complaint on consent against American Home Assurance Company, Central National Insurance Company of Omaha, but only as to policies issued by Cravens, Dargan & Company, Pacific Coast, and its subsidiaries, Century Indemnity Company, formerly known as CCI Insurance Company, formerly known as Insurance Company of North America, Columbia Casualty Company, The Continental Insurance Company (successor-in-interest to Harbor Insurance Company), Federal Insurance Company, Firemen's Fund insurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Swiss Reinsurance America Company (successor-in-interest to Forum Insurance Company) (together, "Defendant Insurers"), and Ferguson Enterprises, Inc. *See* Second Am. Compl.

The Second Amended Complaint asserts six claims for relief: (1) declaration of coverage of whether and to what extent the Defendant Insurers "are obligated under their respective policies to defend Ferguson or to reimburse it for defense costs incurred in connection with the Underlying Lawsuits"; (2) declaration of coverage of whether and to what extent the Defendant Insurers are obligated to indemnify Ferguson or reimburse it for indemnity costs incurred in connection with the Underlying Lawsuits; (3) declaration of the Defendant Insurers' "respective allocable shares, if any, of the past and/or future defense costs incurred in the Underlying Lawsuits"; (4) declaration of the Defendant Insurers' "respective allocable shares, if any, of the past and/or future indemnity costs incurred in the Underlying Lawsuits"; (5) if First State is found to have paid more than its share of the defense or indemnity costs, declaration that First State is entitled to reimbursement for the appropriate share of their defense and indemnity payments; and (6) declaration that First State is "equitably subrogated to Ferguson's rights against certain of the defendant insurers and/or the Doe Insurers to recover the above-described defense and indemnity amounts owed by certain Defendant Insurers and/or Doe Insurers." Second Am. Compl. ¶¶ 52–71.

On January 8, 2018, First State moved for partial summary judgment on the number of aggregate limits provided by a policy issued by Swiss Re, based on umbrella or excess policies issued to Familian covering the period between December 18, 1984 and April 1, 1986 ("Swiss Re Umbrella Policy"). First State Mot. That same day, Ferguson moved for partial summary judgment on the number of aggregate limits in Swiss Re's insurance policy. Ferguson Mot. on Swiss Re. Both First State and Ferguson argue that the Court should construe the 15.5-month policy as containing two aggregate limits of $5 million each, resulting in total liability for Swiss Re of $10 million. *See* Memorandum of Law in Support of First State Mot., dated Jan. 8, 2018

("First State Mem."), annexed to First State Mot., ECF No. 161-1; Memorandum of Law in Support of Ferguson Mot. on Swiss Re., dated Jan. 8, 2018 ("Ferguson Mem. on Swiss Re"), annexed to Ferguson Mot. on Swiss Re., ECF No. 162-7.

On March 1, 2018, Swiss Re filed a motion for partial summary judgment on the aggregate limits in its insurance policy, arguing that the policy "has a single $5 million aggregate limit, and there is no dispute that [Swiss Re] has paid the full $5 million to or on behalf of Familian." Memorandum of Law in Support of Swiss Re Mot., dated Jan. 8, 2018 ("Swiss Re Mem."), annexed to Swiss Re Mot., ECF No. 179-1, at 1.

On April 30, 2018, American Home Assurance Company ("American Home") moved for partial summary judgment, arguing that First State's claims are barred by the statute of limitations. Memorandum of Law in Support of Am. Home Mot. on SOL, dated Apr. 30, 2018 ("Am. Home Mem. on SOL"), annexed to Am. Home Mot. on SOL, ECF No. 191-1. That same day, American Home also moved for partial summary judgment on separate grounds, arguing that the aggregate limits under the policy it issued to Familian remained $30 million despite a brief ten-day extension of that policy. Memorandum of Law in Support of American Home Mot. on Agg. Limits, dated Apr. 30, 2018 ("Am. Home Mem. on Agg. Limits"), annexed to Am. Home Mot. on Agg. Limits, ECF No. 192-1.

On June 4, 2018, Columbia Casualty Company and The Continental Insurance Company (together, "CNA") moved for partial summary judgment on the application of the statute of limitations, arguing that a significant portion of First State's claims against CNA are barred by the statute of limitations. Memorandum of Law in Support of CNA Mot., dated June 4, 2018 ("CNA Mem."), ECF No. 197-1, at 2.

Also on June 4, 2018, Ferguson moved for partial summary judgment on the limits of liability of American Home's policy, arguing that American Home's policy has a total of $40 million in aggregate limits over four annual periods. Memorandum of Law in Support of Ferguson Mot. on American Home, dated June 4, 2018 ("Ferguson Mem. on Am. Home Mot."), ECF No. 204-1, at 1.

On September 5, 2018, the Court held a hearing on the pending motions for summary judgment. *See* Transcript of Motions Hearing, dated Sept. 13, 2018 ("Tr."), ECF No. 256.

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine dispute of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). A court, however, will not infer a genuine issue of material fact from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers courts to render declaratory judgments on cases that are "sufficiently real and immediate, allowing specific and conclusive relief . . . and [ ] ripe for adjudication." *Pub. Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952); *see also Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) ("Declaratory judgment would thus provide the parties with specific, conclusive relief in resolving whether Middlesex has a duty to defend."). Such relief, where appropriate, can be provided at the summary judgment stage. *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) (citing *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 397–98 (2000)).

## III.     DISCUSSION

The pending summary judgment motions fall into two broad categories: (1) motions addressing the aggregate limits of excess insurance policies; and (2) motions addressing statutes of limitations issue.

The first set of motions require the Court to consider whether Swiss Re's 15.5-month policy contains a single aggregate limit of $5 million or two aggregate limits for a total of $10 million, *see* First State Mot., Ferguson Mot. on Swiss Re, Swiss Re Mot., and whether American Home's three-years-and-ten-days policy contains three aggregate limits of $10 million each, for a total of $30 million, or four aggregate limits of $10 million each, for a total of $40 million, *see* Am. Home Mot. on Agg. Limits.

The second set of motions addresses whether any of First State's claims against American Home or CNA are barred by the applicable statute of limitations. *See* Am. Home Mot. on SOL; CNA Mot.; Ferguson Mot. on Am. Home.

### A. No Genuine Dispute of Material Fact

Summary judgment is appropriate on these motions because all parties agree that there is no genuine dispute of material fact. First State, Ferguson, Swiss Re, American Home, and CNA—the movants here—all agree that the policies First State alleges that Swiss Re, American Home, and CNA issued to Familian were indeed issued, and there is no dispute as to the literal text of those policies. *See* D. Conn. L. Civ. R. 56(a)1 Statements, ECF Nos. 161-2, 162-8, 179-2, 191-2, 192-2, 197-2, 204-5. All movants also agree that determining the monetary levels of coverage in these policies solely involves questions of law—namely, the application of principles of contract interpretation. The Court therefore finds that summary judgment on these motions is appropriate.

### B. Motions for Summary Judgment on the Aggregate Limits of Excess Insurance Policies

#### 1. The Issue of the Aggregate Limits on the Swiss Re Excess Insurance Policy

The Court first considers the three motions for summary judgment based on Swiss Re's excess insurance policy's aggregate limits. *See* First State Mot.; Ferguson Mot. on Swiss Re; Swiss Re Mot. Because these three motions address the same issue—how to interpret an insurance contract issued by Swiss Re to Familian—the Court considers them together.

The dispute over Swiss Re's policy limits arose because, on April 5, 2017, Swiss Re stated that Familian had exhausted all applicable liability limits under its umbrella policy after Swiss Re had paid $5 million in claims for the policy period from December 18, 1984 to April 1, 1986. First State Mem. at 1–2.

First State and Ferguson argue that Swiss Re, in fact, owes an additional $5 million in coverage, because the policy period contains two policy years: the first from December 18, 1984

until December 18, 1985, and the second from December 18, 1985 until April 1, 1986. *Id.* at 2.

First State and Ferguson argue that the insurance policy distinguishes the phrase "policy period"

from "policy year," and that, under this policy, there were two policy years in a single policy

period. *Id.* at 2–3. First State argues that "the Court must give effect to the policy language,

specifically the Retained Limit – Limits of Liability provision, which makes clear that the

aggregate limit applies to each 'policy year' rather than each 'policy period.'" First State Reply

to Swiss Re Opposition to First State Mot., dated March 22, 2018 ("First State Reply"), ECF No.

187, at 1.

Swiss Re responds that the policy has a $5 million aggregate limit, which it has paid.

Swiss Re Memorandum of Opposition to First State Mot. and Ferguson Mot. on Swiss Re, dated

Feb. 28, 2018 ("Swiss Re Opp."), ECF No. 175, at 1 (arguing that First State is asking "this

Court to convert what plainly was at its inception and which remains today, a single policy of

insurance with a single policy period and a single aggregate limit, into something it is not: two

policies of insurance with two policy periods and two aggregate limits"). Swiss Re argues that

"Ferguson and First State selectively focus on the phrase 'policy year' which appears in the pre-

printed form language in the Policy jacket, and urge the Court to find that it takes precedence

over the Declarations Page and thereby creates two limits where only one exists." *Id.* at 2. Swiss

Re argues that the phrases "annual period" and "policy year," which appear in the insurance

policy, "are not material at all and do not override the limits stated in the Declarations that are

specific to a particular policy" that "[t]heir presence proves nothing about the number of

aggregate limits afforded here." *Id.* at 9.

Swiss Re also argues that "[e]ven if the Court were to find that the language contained in

the policy form conflicts with the language set forth in the Declarations, under California

principles of contract interpretation, the written Declarations control." *Id.* at 9 (citing CAL. CIV. CODE § 1651 ("Where a contract is partly written and partly printed . . . the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."). Swiss Re argues that "[t]he stated limit is the amount the policy provides, no more and no less," and here, "the stated aggregate limit of $5 million is the maximum amount to which Ferguson is entitled." *Id.* at 12. The Court agrees.

For the reasons that follow, the Swiss Re excess insurance policy at issue covers a single policy period of 15.5-months, from December 18, 1984 to April 1, 1986, and has a single aggregate limit of $5 million of coverage.

### a.    Choice of Law

As this is a diversity case, the Court applies the choice-of-law rules of the forum state,, Connecticut. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) ("In cases where jurisdiction is based on the diversity of the parties' citizenship, a federal court will apply the choice-of-law rules of the forum state."). Connecticut's choice of law approach for contracts is the most significant relationship test under the Second Restatement of Contracts. *Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.*, 252 Conn. 774, 781 (2000); *see also Am. States Ins. Co. v. Allstate Ins. Co.*, 282 Conn. 454, 461 (2007) (noting that in *Reichhold*, the Connecticut Supreme Court "adopted the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws, for analyzing choice of law issues involving contracts"). "With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), which creates a rebuttable presumption in favor of the state where the insured risk is located.  In order to overcome this presumption, another state's interest must

outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption." *Reichold*, 243 Conn. at 781 (internal citation omitted).

Ferguson and Swiss Re agree that California has the most significant relationship to the parties' dispute as Swiss Re issued an insurance policy to Familian at a California address to address risks primarily located in the State of California. *See* Ferguson Mem. on Swiss Re at 5 n.2; Swiss Re Opp. at 4. First State argues that because California law is not in conflict with Connecticut law a choice of law analysis is unnecessary. *See* First State Reply at 3 n.2.

Even if there is no conflict, however, the Court must still apply Connecticut's choice of law rules to determine what law to apply to decide these motions. Under that framework, the Court agrees with Ferguson and Swiss Re and therefore finds that California law governs the court's contract interpretation analysis. *See New England Reinsurance Corp. v. Ferguson Enters., Inc.*, No. 12 CV 948, 2014 WL 1279263, at *3–4 (D. Conn. Apr. 8, 2014) (finding that California had the most significant relationship because "the insured risk is located in California where the products were sold and where the majority of the claims have been filed. The insured [] was a California corporation and its place of business was in California. The policies were purchased in California and almost all of the asbestos-related claims have been filed in California.").

### b.     Aggregate Limits under the Policy

Having determined the applicable law, the Court now must determine whether the Swiss Re insurance policy provides for one policy year with one aggregate limit or two policy years with two aggregate limits. As explained above, First State and Ferguson argue that Swiss Re's policy contains a single policy period, which lasts longer than a calendar year, and thus contains two "policy years." First State Mem. at 3; Ferguson Mem. on Swiss Re at 5–6. Swiss Re, in turn,

argues that the contract contains a single policy term with a single aggregate limit, which it paid. Swiss Re Opp. at 1–2. The Court begins its review, as it must, by examining the applicable contract language.

On the second page of the Swiss Re policy,[1] as a part of a set of general policy coverage declarations, the policy states:

> V.      RETAINED LIMIT – LIMIT OF LIABILITY
>
> > With respect to Coverage 1(a), 1(b) or 1(c), or any combination thereof, the company's liability shall be only for the ultimate net loss in excess of the insured's retained limit defined as the greater of:
> >
> > > (a) the total of the applicable limits of the underlying policies listed in Item 4 of the declarations hereof, and the applicable limits of any other underlying insurance collectible by the insured, or
> > >
> > > (b) an amount as stated in Item 5 of the declarations as the result of any one occurrence not covered by the said policies or insurance, and then up to an amount not exceeding the amount as stated in Item 6(A) of the declarations as the result of any one occurrence. There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed the aggregate amount stated in Item 6(B) of the declarations.

Swiss Re Policy at 3, § V. The policy's declarations page, which is specific to Familian, provides:

> Item 6. Limit of Liability:
>
> > (a) $5,000,000          each occurrence

---

[1] The Court refers to this insurance policy as the "Swiss Re policy" to simplify matters, but Swiss Re did not issue the underlying policy. Swiss Re is the eventual successor to Forum Insurance Company, the company that originally issued the relevant Commercial Comprehensive Catastrophe Liability Policy. *See* Forum Insurance Company Commercial Comprehensive Catastrophe Liability Policy ("Swiss Re Policy"), annexed as Ex. A to Affidavit of Jeffrey L. Schulman, Esq., annexed to Ferguson Mot. on Swiss Re, ECF No. 162-2.

(b) $5,000,000        aggregate

*Id.* at 5, Item 6.

First State and Ferguson argue that because the contract refers to both a policy period, *id.* at 3, § 5(b) ("There is no limit to the number of occurrences during the policy period for which claims may be made . . ."), and policy year, *id.* (". . . except that the liability of the company arising out of the products hazard on account of all occurrences during each policy year shall not exceed the aggregate amount stated in Item 6(B) of the declarations"), the insurance company must have provided for coverage during two different time periods. First State Mem. at 2–3; Ferguson Mem. on Swiss Re at 2–3. While the policy period refers to the full length of the contract—15.5 months—the second half of the sentence, First State and Familian argue, states that regardless of the number of occurrences claimed, the insurance policy provides for $5 million per year during the time when the insurance policy is in place. *Id.*

Swiss Re, on the other hand, argues that, "[b]y its plain language, the Policy provides for a single $5 million aggregate limit" because "the Declarations page plainly states that the Policy provides a $5 million aggregate Limit of Liability for the policy period, which runs from December 18, 1984 to April 1, 1986." Swiss Re Mem. at 5. The Court agrees.

Viewed as a whole, the plain language of the contract is consistent in providing for a single period of coverage: a "policy period" from December 18, 1984 to April 1, 1986. *See* Cal. Civ. Code § 1636 ("The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties."). Indeed, apart from the Declarations page, several other places indicate that the relevant contract period lasted from December 18, 1984 until April 1, 1986. *See, e.g.*, Swiss Re Policy at 8 (listing "term" from December 18, 1984 to April 1, 1986 and describing "limits of insurance hereunder" as $5,000,000 for each occurrence and aggregate excess underlying limits); *id.* at 9 (same); *id.* at 23 (same).

Reading the contract as a whole, it would "involve an absurdity," CAL. CIV. CODE § 1683, to read into this policy two aggregate limits, based on a single, unexplained and undefined reference to the phrase "policy year." *See Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 968 (2001) ("[W]e do not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose.") (citation omitted); *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985) ("The court will not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.") (citing *Jarvis v. Aetna Cas. & Sur. Co.*, 633 P.2d 1359, 1363 (Alaska 1981) (applying California law)); *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 827 (9th Cir. 1957) ("[A] court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract."); *AstenJohnson v. Columbia Cas. Co.*, 483 F. Supp. 2d 425, 479 (E.D. Pa. 2007) (finding that two eighteen-month policies each extended single aggregate limits to the plaintiff because "[t]he policies provide[d] a single aggregate limit per 'annual' period, and there was but a single 'annual' period to each policy," and that reading "a second aggregate limit into the insurance policy for the six-month period . . . would be to re-write the insurance policies"), *aff'd in part, rev'd in part*, 562 F.3d 213 (3d Cir. 2009); *see also William Powell Co. v. OneBeacon Insurance Co.*, 2016-Ohio-8124, ¶¶ 40–42 (Ohio App. 2016) (finding thirteen- and fourteen-month policies to provide single aggregate limits)).

While the Court does not find that this lone reference to a "policy year" creates an ambiguity over the parties' contractual obligations, even if it did, reading this contract to contain

a single aggregate limit is consistent with the expectations of both promisor and promisee at the time the contract was formed. *See* Cal. Civ. Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807 (1990) ("If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promise understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist.") (citing Cal. Civ. Code §§ 1649, 1654); *see La Jolla Beach and Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal.4th 27, 37 (1995) ("If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage."); *Ameron*, 50 Cal. 4th at 1378 ("An insurance policy provision is ambiguous when it is susceptible of two or more reasonable constructions," and "[i]f ambiguity exists, . . . the courts must construe the provisions in the way the insurer believed the insured understood them at the time the policy was purchased.").[2]

---

[2] Ferguson notes that in April 1985, "it was confirmed that the Swiss Re Policy was sold 'because of the cancellation of [Familian's] previous umbrella effective December 18, 1984. The [Swiss Re Policy] will be amended to reflect a new installment premium and will remain in force through April 1, 1986.'" Ferguson Mem. on Swiss Re at 14. The premium was payable in two installments of $11,400 and $40,000, for a total of $51,400. *Id.* Ferguson argues that "[w]hen a policy is in effect for only a fraction of a year and the insured pays a prorated premium for that portion of the year, the insured is entitled to the full aggregate annual limit of the policy for that fraction of the year." *Id.* at 6 (citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1216–17 (2d Cir. 1995)). The Second Circuit in *Stonewall* held that nothing in the policy "provide[d] for proration of annual aggregate limits where the policy is in effect for only a fraction of a year," and instead, the "policies [were] silent on the consequences of cancellation, making this another ambiguity to be resolved against the insurer." *Id.* Finally, the Second Circuit found that, "in exchange for a reduction in premiums, [the insurer] received a reduction in the amount of time it was on the risk." *Id.* at 1217. The Second Circuit's decision in *Stonewall* is inapposite.

Here, the parties did not contract for a pro-rated year, but rather, a single 15.5-month policy. *See, e.g.*, Swiss Re Policy at 8 (listing "term" from December 18, 1984 to April 1, 1986 and describing "limits of insurance hereunder" as $5,000,000 for each occurrence and aggregate excess underlying limits); *id.* at 9 (same); *id.* at 23

(Continued . . .)

The Court therefore finds that the Swiss Re policy contains a single aggregate limit of $5 million. As a result, First State's motion for summary judgment and Ferguson's motion for summary judgment are denied. Swiss Re's motion for summary judgment is granted.

**2.     American Home Assurance Company's Motion for Summary Judgment on Aggregate Limits**

Having decided that the Swiss Re insurance policy contains a single aggregate limit, it follows that the American Home policy, which provided for coverage over one year and ten days, also contains a single aggregate limit. For the following reasons, American Home's motion for summary judgment on the aggregate limits under its policy is granted. Relatedly, Ferguson's motion for summary judgment against American Home is denied.

American Home argues that its policy was in effect from March 5, 1974 until March 15, 1977, and that it covers three annual periods, each with an aggregate limit of $10 million, for a total of $30 million.  Am. Home Mem. on Agg. Limits at 1–2. Ferguson and First State respond that American Home's policy covers four annual periods, each with separate $10 million aggregate liability limits, for a total of $40 million. Ferguson Mem. on Am. Home at 1.

The American Home policy states:

> Item 3(A) $10,000,000 Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof in excess of (1) the amount recoverable under the underlying insurance as set out in the attached Schedule A, or (2) $10,000,000 ultimate net loss in respect of each occurrence not covered by said underlying insurance.

> Item 3(B) $10,000,000 in the aggregate for each annual period in accordance with Insuring Agreement III.

---

(same). The insurance policy, everywhere but in one phrase in the Declarations Page, refers to the policy term, and defines the policy term as the period from December 18, 1984 to April 1, 1986. The Court therefore will not construe one stray reference to a "policy year" to mean that the parties meant to pro-rate a second annual term with its own aggregate limit; that would allow a single phrase to swallow the plain meaning of the rest of the policy and the reasonable expectations of the contracting parties.

American Home Policy ("Am. Home Policy"), annexed as Ex. 1 to Declaration of Karen Torain,

ECF No. 192-3, at AIG000001. Insuring Agreement III of the American Home Policy provides:

> There is no limit to the number of occurrences during the policy period for which claims may be made, except that the company's total limit of liability arising out of the Products Hazard or the Completed Operations Hazard or both combined shall not exceed the amount stated in Item 3A of the Declarations as respects all occurrences during each annual period commencing with the effective or anniversary date of this policy.

*See id.* at AIG000037.

On March 5, 1975, for a premium charge of $325, American Home extended its Policy for ten days. *Id.* at AIG000030. American Home argues that the "ten day extension of the period of the American Home Policy was granted to Familian as an accommodation so that it could avoid a gap in coverage that would otherwise be created by the original March 5, 1977 expiration date of the American Home Policy and the March 15, 1977 inception date" of the policy it had purchased from the Insurance Company of the State of Pennsylvania, which would begin after the expiration of the American Home policy. Am. Home Mem. on Agg. Limits at 4.

For reasons similar to those discussed above, the Court finds that the American Home policy contains three, not four, aggregate limits, and that the ten-day extension does not change that reading. Viewing the American Home policy in its entirety, the parties contemplated coverage over three annual periods, with three aggregate limits of $10 million each. *See* Am. Home. Policy at AIG0000001; AIG0000037. When the parties contracted for an additional ten days of coverage, , the parties did not specify that Familian would enjoy an additional $10 million of coverage, but instead stated that "the expiration date of this policy as shown in Item #2 of the Declaration, is amended to read as follows: March 15, 1977." *Id.* at AIG0000030. The policy also states that "[a]ll other terms and conditions remain the same." *Id.*

A reading of this policy consistent with its plain meaning results in one conclusion: that the parties negotiated that third policy year of the American Home policy would extend for ten days to provide Familian with coverage for the gap period between its policies, but not that it would provide an additional $10 million in an extra aggregate limit. *See Certain Underwriters*, 24 Cal.4th at 968 ("[W]e do not rewrite any provision of any contract, including the standard policy underlying any individual policy, for any purpose.") (citation omitted); *Ellison*, 757 F.2d at 1044 ("The court will not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.") (citing *Jarvis*, 633 P.2d at 1363); *Matsuo Yoshida*, 240 F.2d at 827 ("[A] court cannot and should not do violence to the plain terms of a contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract.") American Home's motion for summary judgment on the aggregate limits under its policy therefore is granted and Ferguson's motion for summary judgment is denied.

## C. Motions for Summary Judgment on the Statutes of Limitations of the Excess Policies

There are also two pending motions for summary judgment based on statutes of limitations of the excess insurance policy. Am. Home Mot. on SOL; CNA Mot.. First State opposes both motions. *See* First State Opposition to Am. Home. Mot. on SOL, dated June 4, 2018 ("First State Opp. to Am. Home Mot. on SOL"), ECF No. 198; First State Opposition to CNA Mot., dated July 9, 2018 ("First State Opp. to CNA Mot."), ECF No. 222. Because those motions address the same initial question of which statute of limitations should apply, the Court considers both motions together.

## a. Choice of Law

The Court first notes that there may be a second choice-of-law question here: whether the statute of limitations of Connecticut or of California applies to this analysis.

A Connecticut court would generally apply Connecticut law to questions on a statute of limitations, because statutes of limitations in Connecticut are normally procedural. *See Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 353 (D. Conn. 2013) ("Where a statute of limitations is considered *procedural*, the law of the forum applies.") (citation omitted); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 n.10 (1984) ("Under traditional choice of law principles, the law of the forum state governs on matters of procedure" and in New Hampshire, for example, "statutes of limitations are considered procedural"); *Hughes v. Equity Office Props. Tr.*, 245 F. App'x 88, 89 (2d Cir. 2007) ("A federal court sitting in diversity applies the forum state's statute of limitations.") (citation omitted). "A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action." *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 525 (1989); *see also Slekis Nat'l R.R. Passenger Corp.*, 56 F. Supp. 2d 202, 204 (D. Conn. 1999) ("Under Connecticut law, statutes of limitations are considered procedural and thus Connecticut's own statutes of limitations will usually govern claims asserted in federal diversity cases in Connecticut."); *Somohano v. Somohano*, 615 A.2d 181, 182 (Conn. App. Ct. 1992) ("The established law of this state is that the statute of limitations is procedural and, therefore, the law of the forum applies."). In Connecticut, the statute of limitations for a claim for equitable contribution is one year. CONN. GEN. STAT. § 52-572o(e).

There is an exception, however, to the rule that a statute of limitations is procedural in Connecticut when the right "did not exist at common law and the foreign statute of limitations is so interwoven with the statute creating the cause of action that forms the basis of action as to become one of the congeries of the elements necessary to establish the right." *Feldt v. Ruger*, 721 F. Supp. 403, 406 (D. Conn. 1989). In that case, the foreign statute of limitations travels with the foreign substantive law. *Id.*; *see also Norton v. Michonski*, 368 F. Supp. 2d 175, 179 (D. Conn. 2005) (stating that the only exception to a statute of limitations being procedural in Connecticut is when "the cause of action did not exist at common law, and the foreign statute of limitations is so interwoven with the statute creating the cause of action, that it becomes one of the elements necessary to establish the right.").

In this particular case, there is a question of whether the Court should apply Connecticut's or California's statute of limitations for equitable contribution claims. *See, e.g.*, Am. Home Mem. on SOL at 9–11 (arguing for application of Connecticut's one-year statute of limitations); CNA Mem. at 2 (arguing for application of California's two-year statute of limitations).[3] The California Court of Appeal explained that equitable contribution is:

> [T]he right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor* who *shares* such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has

---

[3] First State argues, on the other hand, that Connecticut's six-year statute of limitations for contracts should apply to this case. First State Opp. to Am. Home Mot. at 11–12 (citing CONN. GEN. STAT. § 52-576). The Court disagrees. A dispute between excess insurers "who have covered the same event do not arise out of contract, for their agreements are not with each other. . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders. *Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 369 (1980) (quoting *Am. Auto. Ins. Co. v. Seaboard Sur. Co.*, 155 Cal. App. 2d 192, 195–96 (1957)).

> independent standing to assert a cause of action against its
> coinsurers for equitable contribution when it has undertaken the
> defense or indemnification of the common insured. Equitable
> contribution permits reimbursement to the insurer that paid on the
> loss for the excess it paid over its proportionate share of the
> obligation, on the theory that the debt it paid was *equally* and
> *concurrently* owed by the other insurers and should be shared by
> them pro rata in proportion to their respective coverage of the risk.
> The purpose of this rule of equity is to accomplish substantial
> justice by equalizing the common burden shared by coinsurers, and
> to prevent an insurer from profiting at the expense of others.

*Firemen's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998).

Equitable contribution claims in California are created by statute. *Hoffman v. May*, 313 F. App'x 955, 958 (9th Cir. 2009) ("[E]quitable contribution is a creature of statute and was not recognized at common law.") (citing *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal App. 4th 1372, 1378 (1992) ("There is a distinction to be made between indemnity and contribution as those terms are applied in California. Indemnity either imposes the entire loss on one of two or more tortfeasors or apportions it on the basis of comparative fault. Contribution, on the other hand, is a creature of statute and distributes the loss equally among all tortfeasors . . . the latter requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment. . . . A right of contribution can come into existence only after rendition of a judgment declaring more than one defendant jointly liable to the plaintiff.")); *see also* CAL. CIV. CODE § 1432 ("[A] party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him"). That statute has a related two-year statute of limitations. CAL. CODE CIV. PROC. § 339 (establishing two-year statute of limitations for equitable contribution claims).

First State has argued that the Ninth Circuit was mistaken in *Hoffman* when it stated that equitable contribution claims are a creation of statute. *See* First State Opp. to CNA Mot. at 12 ("That case is not on point because equitable contribution among insurers and common-law

contribution among tortfeasors have little in common except the word "contribution."). The California Supreme Court and the California Court of Appeal, however, have also recognized that equitable contribution claims are creatures of statute, the result of action by the California legislature in 1957. *See Am. Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 592, (1978) ("In 1957, the California Legislature enacted a bill to ameliorate the harsh effects of that 'no contribution' rule; this legislation did not, however, sweep aside the old rule altogether, but instead made rather modest inroads into the contemporary doctrine . . . . the passage of the 1957 legislation had the effect of foreclosing any evolution of the California common law contribution doctrine beyond its pre-1957 "no contribution" state."); *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 14 Cal. Rptr. 2d 673, 677 (Ct. App. 1992) ("Contribution was not recognized at common law but was adopted in California by statutory enactment in 1957.")

Regardless of whether the Court applies Connecticut or California law here the outcome is the same: First State's claims at issue against American Home and the claims at issue against CNA are barred by the statute of limitations of either state. Because California's statute of limitations provides for two years, and Connecticut's provides for one year, in addition to this right of action being one created by statute, the Court will consider the claims under California law. Indeed, if the claims do not survive under California law, the longer statute of limitations period, they also would not survive under Connecticut law's shorter statute of limitations period.

**b.      Application of Two-Year Statute of Limitations**

First State, American Home, and other companies issued first-layer excess policies to Familian for the period from March 5, 1974 to April 1, 1986. Second Am. Compl. ¶¶ 37-38; 26. CNA issued a second-layer excess policy to Familian with $4 million in aggregate limits, with a policy period that ran from March 15, 1978 until March 5, 1979. Second-Layer Excess Policy

("CNA Policy"), annexed as Ex. A to Declaration of John A. Mattoon, Esq. ("Mattoon Decl.,

ECF No. 197-4. That policy sits directly above First State's first-layer umbrella policy issued to

Familian with a $1 million aggregate limit. First-Layer Excess Policy ("First State Policy"),

annexed as Ex. B to Mattoon Decl., ECF No. 197-5.

On March 6, 2002, Ferguson notified its first-layer excess insurers that the primary

coverage had been exhausted, and from approximately February 2003, the first-layer excess

insurers shared indemnity and defense costs according to an informal cost-share agreement. *See*

Letter, dated Oct. 24, 2002, annexed as Ex. 9 to Declaration of Karin Torain, dated Apr. 18, 2018

("Torain Decl."), ECF No. 191-3, at 41. Under the cost-share agreement, First State would pay

56.6% of the defense and indemnity of the underlying lawsuits, and American Home and its

affiliate Insurance Company of the State of Pennsylvania would pay 16.62%. *See* Email, dated

Nov. 14, 2002, annexed as Ex. 10 to Torain Decl., at 44. Other insurers would pay for the

remaining shares. *Id.* The cost-share agreement calculated American Home's participation for

the time period from March 5, 1976 until March 15, 1977 and the policy limit for that single

year. *Id.*

On April 9, 2002, American Home acknowledged that it received Ferguson's March 6

Letter, and explained that American Home's policy lasted from 1974 until 1977. *See* Letter,

dated April 9, 2002 Letter, annexed as Ex. 3 to Torain Decl., at 20.

In September 2011, First State notified CNA that the 1978–1979 First State policy had

been exhausted in 2005 or 2006, and it sought coverage from CNA.[4] *See* Letter, dated Sept. 14,

2011, annexed as Ex. E to Mattoon Decl., ECF No. 197-8. CNA responded that it would not

---

[4] There is a non-material factual dispute over whether the policy exhausted in 2005 or on April 11, 2006. *See* CNA Mot. at 6.

participate in the underlying settlements. *See* Email, dated Apr. 23, 2013, annexed as Ex. F to Mattoon Decl., ECF No. 197-9.

On March 4, 2013, First State sought coverage from the first-layer excess carriers under a proposed revised cost-share agreements. *See* Email, dated Mar. 4, 2013, annexed as Ex. 12 to Torain Decl. In 2015, American Home agreed to a new cost-share agreement that included American Home's participation for three policy years. *See* Email, dated Dec. 8, 2015, annexed as Ex. 13 to Torain Decl.

On February 25, 2016, First State sought reimbursement from American Home for amounts under the 2003 cost-share agreement based on a three-year time period. *See* Email, dated Feb. 25, 2016, annexed as Ex. 14 to Torain Decl.

As for CNA, whether the Court calculates the statute of limitations from 2005, 2006, or 2011, the claims would fail under California's two-year statute of limitations for equitable contribution. CAL. CODE CIV. PROC. § 339 (establishing two-year statute of limitations for equitable contribution claims); *see also Emp'rs Ins. Co. v. Travelers Indem. Co.*, 141 Cal. App. 4th 398, 403 (2006) ("Where two or more insurers' policies potentially cover an insured's liability and one of them bears the defense burden alone, the insurer bearing that burden is entitled to equitable contribution from the non-defending carriers.").[5]

The same is true for American Home. First State sought equitable contribution in 2016 of a claim that accrued in 2003, or at the very latest in 2013 when it revised the cost-share agreements. Neither date, however, falls within the two-year statute of limitations under CAL. CODE CIV. PROC. § 339.

---

[5] CNA moved only for partial summary judgment because it argues that the statute of limitations argument will result in a finding that "the vast majority of First State's contribution claim is untimely," but not all of First State's claims. CNA Mot. at 14.

### c.     Laches

First State argues that equitable contribution, "as the term itself implies, is grounded in equity, not created by statute," and that its claims are thus for equitable relief; it thus claims that its claims are not time-barred unless CNA or American Home can invoke the defense of laches. First State Opp. to CNA Mot. at 6; First State Opp. to Am. Home Mot. at 9–12. The Court disagrees.

The defense of laches is only available in claims seeking equitable relief. This is true whether or not the Court applies California or Connecticut law in determining whether to apply the defense of laches. *Compare Doe v. Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 400–02 (2015) (discussing the well-established principle that laches is a purely equitable doctrine and noting that to import laches a defense to actions at law would pit the legislative value judgment embodied in a statute of limitations against the equitable determinations of individual judges), *with People v. Koontz*, 27 Cal.4th 1041, 1088 (2002) ("The doctrine of laches may be asserted only in a suit in equity.") (citation omitted). Because First State is seeking to recover damages, however, laches is not applicable here.

As explained above, equitable contribution claims under California law are statutorily created; even if they were not, however, they do not seek an equitable remedy and are thus not subject to the defense of laches. The title of "equitable contribution" should not be conflated with the concept of an equitable remedy. *See Shaw v. Superior Court*, 2 Cal.5th 983, 995 (2017) ("If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action. A jury trial must be granted

where the gist of the action is legal, where the action is in reality cognizable at law. On the other hand, if the action is essentially one in equity and the relief sought depends upon the application of equitable doctrines, the parties are not entitled to a jury trial.") (quoting *People v. One 1941 Chevrolet Coupe*, 37 Cal.2d 283, 299 (1951)); *C & K Eng'g Contractors v. Amber Steel Co.*, 23 Cal.3d 1, 6–8 (1978) (finding that while the doctrine of promissory estoppel is one that arose in actions at law, it is essentially equitable in nature, developed to provide a remedy that was not available at law); *Wenzel & Henoch Const. Co. v. Metro. Water Dist. of S. Cal.*, 18 F. Supp. 616, 620 (S.D. Cal. 1937) ("[W]hether a cause of action is legal or equitable does not depend upon the form adopted, or the name which the pleader may have given to it. It depends upon the facts pleaded or the remedy sought. If the fact pleaded are such that their determination depends upon the application of the principles of equity, jurisprudence, the action is equitable. If the remedy sought calls for the exercise of the powers which only a chancellor can exercise, the cause of action is, likewise, equitable. . . . To call for the intervention of a court of chancery, it is still necessary, under it, to allege special equitable grounds."); *cf. Kaufman v. Goldman*, 195 Cal. App. 4th 734, 743 (2011) (noting that "the breach of an agreement to transfer real property cannot adequately be satisfied by financial payment" and therefore specific performance, an equitable remedy, is required).

It is true that in *Firemen's Fund*, the California appellate court defined equitable contribution as a "rule of equity [that aims] to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent an insurer from profiting at the expense of others." *Firemen's Fund Ins. Co.*, 65 Cal. App. 4th at 1293. The Court also explained, however, that "[i]n the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its

share of the loss or defended the action without any participation by the others." *Id.* "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." *Id.*

Although "equitable" is a part of the title of an "equitable contribution claim," First State seeks monetary damages, not an injunction or specific performance. *Cf. Kaufman v. Goldman*, 195 Cal. App. 4th 734, 743 (2011) (noting that "the breach of an agreement to transfer real property cannot adequately be satisfied by financial payment" and therefore specific performance, an equitable remedy, is required). Those claims therefore seek a legal remedy, not an equitable one, insofar as payment of damages in this equitable contribution claim would be a full and adequate remedy. *See Asare v. Hartford Fire Ins. Co.*, 1 Cal. App. 4th 856, 867 (Ct. App. 1991) ("Determining whether the gist of a claim is in law or equity depends in large measure upon the mode of relief to be afforded. Generally, where the legal remedy of damages is full and adequate and can do complete justice between the parties, no equitable remedy is available.") (internal quotation marks and citation omitted).

Even if First State's claims were not derived from statute and sought an equitable remedy, and thus subject only to the time limit imposed by the defense of laches, those claims would fail as First State has still waited too long to assert its rights. Under California law, the Court would apply the analogous statutes of limitations period to determine the "outer limit of reasonable delay[.]" *Fountain Valley Reg'l Hosp. & Med. Ctr. v. Bonta*, 75 Cal. App. 4th 316, 324 (1999) (quoting *Brown v. State Pers. Bd.*, 166 Cal. App. 3d 1151, 1159–60 (1985)). Here, as to its claims against CNA, First State delayed for at least five years, and maybe as many as

eleven years, to assert its claim that Ferguson's first-level excess coverage had exhausted and CNA was responsible for further coverage. *See* Letter, dated Sept. 14, 2011, annexed as Ex. E to Mattoon Decl., ECF No. 197-8. As to its claims against American Home, First State delayed at least three years. *See* Email, dated Mar. 4, 2013, annexed as Ex. 12 to Torain Decl. Under the analogous statute of limitations—California's two-year statute of limitations for equitable contribution claims—both claims are stale.[6]

### d.    Equitable Tolling

First State finally argues that, even if the Court applies California's statute of limitations, First State's claims were equitably tolled. First State Opp. to CNA Mot. at 10. First State cites one case finding that a claim for equitable contribution was tolled until "the plaintiff insurer makes the last payment in the underlying suit for which the plaintiff insurer is seeking contribution." *Id.* (quoting *Underwriters of Interest Subscribing to Policy No. A15274001 v. ProBuilders Specialty Ins. Co.*, 193 Cal. Rptr. 3d 898, 911 (Ct. App. 2015)). First State argues that it "is continuing to pay claims," and therefore has "not yet fulfilled its obligations, and under California law the statute of limitations has not run." *Id.* at 12.

The California Supreme Court has held, however, that for equitable tolling to be invoked a plaintiff must show three elements: timely notice, lack of prejudice to the defendants, and reasonable and good faith conduct by the plaintiff. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 103 (2008); *Addison v. State of California*, 21 Cal.3d 313, 319 (1978). The logic for those requirements is that equitable tolling should be rarely invoked, but done so in

---

[6] First State argues that the analogous statute of limitations is the six-year statute of limitations in Connecticut for claims based on written contracts. Under California law, whether or not such a borrowing should occur "depends upon the strength of the analogy." *Fountain Valley*, 75 Cal.App.4th at 324. A much stronger analogy can be made with the statute of limitations for statutory equitable contribution claims specifically than with the statute of limitations that applies to claims based on written contracts generally.

order to "foster[] the policy of the law of [California] which favors avoiding forfeitures and allowing good faith litigants their day in court." *Addison*, 21 Cal.3d at 320–21. The Court sees nothing in the *Underwriters* case relied on by First State to suggest that these threshold requirements for equitable tolling do not apply to equitable contribution claims.

First State's delay was so extended that it cannot possibly satisfy these threshold requirements. It does not appear that First State gave CNA timely notice of its claims. Again, as to its claims against CNA, First State delayed for at least five years, and maybe as many as eleven years, to assert its claim that Ferguson's first-level excess coverage had exhausted and CNA was responsible for further coverage. *See* Letter, dated Sept. 14, 2011, annexed as Ex. E to Mattoon Decl., ECF No. 197-8. As to its claims against American Home, First State delayed at least three years. *See* Email, dated Mar. 4, 2013, annexed as Ex. 12 to Torain Decl. Nor has First State demonstrated reasonable or good faith conduct, i.e. by attempting to pursue remedies that lessened the extent of its claims.

### d.    Conclusion

The Court therefore concludes that First State's claims must fail as a matter of law, as they were brought significantly after the two-year statute of limitations had lapsed. Accordingly, American Home's and CNA's motions for summary judgment on the statute of limitations are granted.

## IV.    CONCLUSION

For the reasons discussed above, First State's motion for partial summary judgment against Swiss Re, ECF No. 161, is **DENIED**. Ferguson's motion for partial summary judgment against Swiss Re, ECF No. 162, is **DENIED**. Swiss Re's motion for summary judgment on the aggregate limits of its policy, ECF No. 179, is **GRANTED**.

American Home's motion for summary judgment on aggregate limits, ECF No. 192, is

**GRANTED**. Ferguson's motion for summary judgment against American Home, ECF No. 204,

is **DENIED**.

American Home's motion for summary judgment on the statute of limitations, ECF No.

191, is **GRANTED**. CNA's motion for summary judgment and partial joinder, ECF No. 197, is

**GRANTED**.

**SO ORDERED** this 28th day of September, 2018, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge